UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PRICE,<br><br>        Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>        Defendant. | Case No. 21-cv-02846-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Plaintiff Matthew Price brings this putative class action lawsuit challenging Defendant Apple, Inc.'s alleged policy of terminating the Apple ID accounts of its users who seek credit or debit card payment returns for app purchases that do not work. Plaintiff asserts eight counts of fraud, tort, and unfair competition violations based on Apple's policy. Apple now moves to dismiss all eight counts, and the motion is fully briefed.[1] *See* Dkt. No. 32 ("Mot."), 34 ("Opp."), 43 ("Reply"). For the reasons below, the Court **GRANTS** the motion.

**I.     BACKGROUND**

For purposes of deciding the motion, the Court accepts the following as true:

Apple is a California corporation that designs and sells smartphones, personal computers, and tablets. These devices run apps and other services for customers to use. To purchase and access the apps, Apple requires its customers to have an Apple ID account and agree to Apple's terms and conditions (the "Apple Terms"). The Apple Terms contain a termination of services section that reads:

---

[1] The Court finds the motion appropriate for disposition without oral argument and deems the motion submitted. *See* Civil L.R. 7-1(b).

TERMINATION AND SUSPENSION OF SERVICES

> If you fail, or Apple suspects that you have failed, to comply with any of the provisions of this Agreement, Apple may, without notice to you: (i) terminate this Agreement and/or your Apple ID, and you will remain liable for all amounts due under your Apple ID up to and including the date of termination; and/or (ii) terminate your license to the software; and/or (iii) preclude your access to the Services.
>
> Apple further reserves the right to modify, suspend, or discontinue the Services (or any part or Content thereof) at any time with or without notice to you, and Apple will not be liable to you or to any third party should it exercise such rights.

Dkt. No. 31-1 (Ex. A to First Amended Complaint) at 12.

Plaintiff has had an Apple ID since 2015. Using his Apple ID, Plaintiff has purchased over $24,000 in apps and services to use on his Apple devices. After some of the apps did not work, Plaintiff complained to Apple. In response, Apple advised him to contact the app developer. When Plaintiff contacted the app developer, the app developer told Plaintiff that it could not return his money or otherwise help him because Plaintiff's purchases were made with Apple. When Plaintiff went back to Apple with his complaints, Apple advised Plaintiff to institute "chargebacks" – requesting payment returns from the bank of the credit or debit card associated with his Apple ID – for those purchases. Following Apple's advice, Plaintiff sought chargebacks for Apple ID purchases of apps that did not work.

In October 2020, after Plaintiff processed his chargebacks, Apple terminated Plaintiff's Apple ID based on its determination that Plaintiff had breached the Apple Terms. As a result, Plaintiff was no longer able to use his Apple ID or the $24,000 of app services he had purchased using the Apple ID.

Plaintiff first filed this putative class action lawsuit against Apple in April 2021. Dkt. No. 1. Five months later, Plaintiff submitted an amended complaint, bringing the following claims: (1) impermissible liquidated damages clause in violation of California Civil Code Section 1671; (2) unconscionable contract provision in violation of the CLRA; (3) unconscionable liquidated damages clause in violation of the UCL; (4) unfair business practice under the UCL; (5) fraudulent business practice under the UCL; (6) conversion; (7) trespass to chattels; and (8) unjust enrichment. Dkt. No. 31 ("Compl."). Apple now moves to dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

## III. DISCUSSION

The Court begins its analysis by noting that Apple's motion and reply brief repeatedly ask the Court to draw inferences in its favor based on allegations not in the complaint. *See* Mot. at 9 (suggesting that "[i]t is far more plausible that [Plaintiff's] Apple ID was terminated because of his fraudulent activity and breaches of the Terms"); Reply at 8 (stating that Plaintiff "admit[ed] he was terminated for misconduct"). These claims are inaccurate, and Plaintiff did not concede any misconduct. The only relevant statement in the complaint simply says that "Apple determined [Plaintiff] breached its terms and conditions." Compl. ¶ 21.

"As a general rule, 'a district court may not consider any material beyond the pleadings in

3

1  ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)
2  (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).  There are two exceptions:
3  "material which is properly submitted as part of the complaint" and judicial notice of "matters of
4  public record." *Id.* at 688-89 (citations omitted).  The suggestion that Plaintiff's Apple ID was
5  terminated based on admitted misconduct appears nowhere in the complaint, any exhibits, or any
6  judicially-noticeable material.  The Court thus declines to consider Apple's improper
7  characterizations at this stage and warns Apple not to overreach in this manner again in any
8  renewed motion to dismiss.

### A. Liquidated Damages (Claim 1)

Plaintiff's first claim asserts that the Apple Terms' termination clause is an unlawful liquidated damages clause under California Civil Code Section 1671.  Plaintiff contends that the provision "provides a formula by which the amount is certain or readily ascertainable" – namely the amount an Apple user spent using his Apple ID before termination.  Compl. ¶¶ 55-56.

Section 1671 of the California Civil Code sets out that:

> [a liquidated damages clause] is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

Cal. Civ. Code § 1671(c)-(d).  In other words, "liquidated damages" is "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement[.]"  *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (holding entitlement to 15% revenue not "liquidated debt" because "revenues to which that percentage figure is to be applied cannot be calculated with reasonable certainty"); *see also Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1256 (N.D. Cal. 2015) ("To be sufficiently fixed and certain to qualify as 'liquidated damages,' a provision must either set the exact amount (i.e., a single number), or provide some formula by which the amount is 'certain or readily ascertainable.'" (quoting *Chodos*, 292 F.3d at 1002)).

Here, the formula Plaintiff asserts based on the challenged termination provision leads to an amount that is neither certain nor "readily discernible at the time of breach." *Id.* When Apple

terminates a user's Apple ID under the termination provision, Plaintiff's claimed formula leads to damages equal to the value of the apps and services the user purchased and can no longer access – in Plaintiff's case, over $24,000. The exact amount thus necessarily varies from user to user: it depends on when the Apple ID account was terminated, what the user purchased through his Apple ID account, and what balance he had in his Apple ID account.[2] Plaintiff's "liquidated damages" theory fails because the termination provision does not contain a fixed or readily ascertainable sum as defined in Section 1671, meaning that it is not a liquidated damages provision at all.

Accordingly, the Court grants Apple's motion to dismiss as to Plaintiff's first claim.

### B.     Unconscionability (Claims 2 and 3)

Apple moves to dismiss Plaintiff's second and third claims on the grounds that the complaint fails to adequately plead unconscionability.

"Unconscionability is a question of law for the court." *Williams v. Tesla, Inc.*, No. 20-CV-08208-HSG, 2021 WL 2531177, at *5 (N.D. Cal. June 21, 2021) (quoting *Seifi v. Mercedes-Benz USA, LLC*, No. 12-CV-5493 TEH, 2013 WL 2285339, at *4 (N.D. Cal. May 23, 2013)). "Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. Procedural and substantive unconscionability need not be present in equal amounts. The two are evaluated on a 'sliding scale,' which means that the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa." *Id.* (citing *Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000)). "However, both forms of unconscionability must be present in some amount 'for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'" *Id.* (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1521 (Ct. App. 1997), *as modified* (Feb. 10, 1997)).

---

[2] Plaintiff's opposition brief offers two entirely different formulas for the purported "liquidated damages," underscoring Apple's contention that the claimed damages are not readily discernible. Opp. at 14-15 (suggesting damages amount is: (1) forfeiting the entire value of apps and services purchased with Apple ID and additional money remaining in Apple ID account; and (2) "all amounts due under Plaintiff's Apple ID up to and including the date of termination").

As Plaintiff points out, "take it or leave it" adhesion contracts like the Apple Terms can implicate procedural unconscionability. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("California courts have held that oppression [a focus of procedural unconscionability] may be established by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." (citation omitted)); *see also Williams*, 2021 WL 2531177, at *5 ("Procedural unconscionability exists when the contract reflects 'inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" (quoting *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 808 (Ct. App. 2006))). But adhesion contracts are not categorically unenforceable. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) ("[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided."). And while Plaintiff correctly points out that contracts for nonessential recreational activities may be found procedurally unconscionable, *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002), Apple cites persuasive case law suggesting that the nature of such contracts weighs against that finding. *See In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) ("[W]hen the challenged term is in a contract concerning a nonessential recreational activity, the consumer always has the option of simply forgoing the activity." (citing *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (Cal. App. 1st Dist. 2007))); *Pokrass v. The DirecTV Grp., Inc.*, No. EDCV 07-423-VAP, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) ("California courts have consistently declined to find procedural unconscionability in contracts for nonessential recreational activities.").

Without determining the degree of procedural unconscionability, the Court concludes that Plaintiff's claim fails in any event because he has not alleged facts showing the Apple Terms were substantively unconscionable. *Williams*, 2021 WL 2531177, at *5 ("Substantive unconscionability 'focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" (quoting *Aron*, 143 Cal. App.

4th at 808)). Plaintiff's explanation for why the Terms are substantively unconscionable – the contract permits Apple to deny its customers access to Apple ID content without any relationship to Apple's incurred damages – does not suggest the Terms are overly harsh or so one-sided as to shock the conscience.

Because Plaintiff's substantive unconscionability argument fails, the Court dismisses Plaintiff's second and third claims. The Court urges Plaintiff to consider carefully whether he can truthfully plead facts sufficient to plausibly meet the "shock the conscience" standard before simply repeating this unconscionability argument in any amended complaint.

### C.    UCL Violations (Claims 4 and 5)

"A business act or practice may violate the UCL if it is either 'unlawful,' 'unfair,' or 'fraudulent.' Each of these three adjectives captures 'a separate and distinct theory of liability.'" *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)). Here, Plaintiff brings his fourth and fifth claims as UCL violations under the "unfair" and "fraudulent" prongs, respectively.

#### i.    "Unfair Business Practice" (Claim 4)

"[T]he California Supreme Court has not established a definitive test to determine whether a business practice is 'unfair' under the UCL. State and federal courts have recognized three tests." *Smith v. LG Elecs. U.S.A., Inc.*, No. 13-CV-04361 PJH, 2014 WL 989742, at *9 (N.D. Cal. Mar. 11, 2014) (internal citations omitted). The first test, the "tethering test," "limits unfair conduct to that which 'offends an established public policy' and is 'tethered to specific constitutional, statutory, or regulatory provisions.'" *Id.* (citing *Davis v. Ford Motor Credit Co.,* 179 Cal. App. 4th 581, 593-97 (2009)). The other test – the "balancing test" – "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) (citing *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268 (2006)). Other courts, like *Smith*, split the balancing test into two separate tests. The first balancing test "evaluates whether the business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' and 'requires the court to weigh the utility of the defendant's

7

conduct against the gravity of the harm to the alleged victim.'" 2014 WL 989742, at *9 (citing *Davis*, 179 Cal. App. 4th at 594-95). The second balancing test "requires that 'the consumer injury . . . be substantial;' that 'the injury . . . not be outweighed by any countervailing benefits to consumers or competition;' and that the injury be one 'that consumers themselves could not reasonably have avoided.'" *Id.* (citing *Davis*, 179 Cal. App. 4th at 597). The Ninth Circuit has not resolved whether federal district courts should apply a balancing or tethering test to the UCL's unfair prong; "instead, it approves the use of either test until the California Supreme Court issues guidance." *Id.* (citing *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)).

Plaintiff attempts to invoke all three tests – the tethering test and the two balancing tests. However, under any test, his allegations fail to plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Under the tethering test, Plaintiff alleges that Apple's termination of its users' Apple ID accounts constitutes "unfair business practice" under the UCL because the governing termination provision is inconsistent with statutes regarding (1) liquidated damages and (2) unconscionable provisions. But this claim relies on the policy and spirit of statutes underlying Plaintiff's first through third claims, which the Court dismissed for being insufficiently pled, *supra* Sections III.A, B. Because those claims have been dismissed, Plaintiff "cannot properly base [his] unfair prong claim on them." *See Williamson*, 2014 WL 4220824, at *7 (dismissing tethering test unfair prong claim where it was tethered to claims that were dismissed).

Under the two balancing tests, Plaintiff asserts that "Apple's acts and practices are unfair in that . . . they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers" and the utility of Apple's termination of its users' Apple ID accounts is outweighed by the gravity of the harm to its users. Compl. ¶¶ 78, 94. Further, he asserts that "the inclusion of the subject clause in [the Apple Terms] and Apple's enforcement of the same causes substantial harm that is not outweighed by countervailing benefits to consumers or competition, and its customers could not reasonably have avoided the harm." *Id.* ¶ 99. But these allegations simply parrot the legal standard for "unfair business practice" under both balancing tests. *Davis*, 179 Cal.

8

1   App. 4th at 595 ("an 'unfair' business practice occurs when . . . 'the practice is immoral, unethical,
2   oppressive, unscrupulous or substantially injurious to consumers'"). They do not compare the
3   harm to consumers against the utility of Apple's conduct. *See Williamson*, 2014 WL 4220824, at
4   *7 (dismissing unfair UCL claim where "Plaintiff [did not] include[] allegations that go towards
5   comparing the harm to consumers against the utility of Defendant's conduct"). And they do not
6   support the inference that Apple's termination of its customers' Apple IDs when it identifies a
7   failure to comply with the Apple Terms is an "immoral, unethical, oppressive, unscrupulous, and
8   substantially injurious" practice. *Id.* (dismissing unfair UCL claim where Plaintiff had not "not
9   provided sufficient factual allegations to plausibly and plainly allege that those practices are
10  'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'").

11  Accordingly, the Court grants Apple's motion to dismiss as to Plaintiff's UCL "unfairness"
12  claim.

### ii. "Fraudulent Business Practice" (Claim 5)

14  Plaintiff's fifth claim alleges that Apple's termination of its users' Apple ID accounts was
15  a "fraudulent business practice" in violation of UCL. Plaintiff asserts that he has adequately pled
16  a claim under the "fraudulent" prong of the UCL where the complaint pleads that Apple requires
17  its users to enter into the adhesion contract and enforces the Apple Terms to terminate users'
18  Apple ID accounts. Compl. ¶ 107.

19  Plaintiff urges the Court to apply a pleading standard more liberal than the heightened
20  pleading requirements of Rule 9(b) because Plaintiff asserts a fraudulent omission under
21  California consumer protection statutes. Opp. at 10. But none of the cases that Plaintiff cites in
22  support of that proposed standard require departing from the Ninth Circuit's rule that UCL claims
23  alleging fraudulent conduct must meet the heightened pleading requirements of Rule 9(b). *Smith*,
24  2014 WL 989742, at *11 (applying heightened 9(b) pleading requirement to UCL fraud claim
25  (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003))); *see also Kearns*,
26  567 F.3d at 1124-25 ("Averments of fraud must be accompanied by the who, what, when, where,
27  and how of the misconduct charged.").

28  And even under the more liberal pleading standard proposed, Plaintiff's UCL fraud claim

fails because Plaintiff does not allege that Apple made any misrepresentations or had knowledge of the falsity of the alleged misrepresentations. *See Kearns*, 567 F.3d at 1126 ("The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"). Instead, the complaint merely recycles the same allegation that Apple used adhesion contracts and terminated its users' Apple ID accounts under the Apple Terms. Plaintiff tries to rescue his claim by pointing to allegations elsewhere in the complaint that Plaintiff and the putative class members would not have entered into a contract with Apple or created an Apple ID "if they had known about Defendant's 'wrongful, illegal, and unconscionable conduct." Opp. at 11. But those allegations are not a substitute for adequately pleading the basic required elements.

Accordingly, the Court grants Apple's motion to dismiss as to Plaintiff's UCL fraud claim.

### D.     Conversion (Claim 6) and Trespass to Chattels (Claim 7)

Plaintiff's sixth claim for conversion asserts that Apple's termination of Plaintiff's Apple ID account constituted an unlawful and intentional interference with his ownership interest in apps and services purchased and accessible only through his Apple ID. Plaintiff's seventh claim for trespass to chattels asserts that Apple's termination of his Apple ID account prevents Plaintiff's use of purchased apps and services and significantly impairs the function of his Apple devices.

"To establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (citing *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329 (1988)). As for trespass to chattels, that claim "lies where an intentional interference with the possession of personal property has proximately caused injury." *hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-CV-03301-EMC, 2021 WL 1531172, at *9 (N.D. Cal. Apr. 19, 2021) (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003)).

Apple moves to dismiss Plaintiff's conversion and trespass to chattels claims on the grounds that Plaintiff (1) consented to Apple's conduct; and (2) does not plausibly allege

interference with his Apple devices.

"A plaintiff in a conversion action must . . . prove that it did not consent to the defendant's exercise of dominion." *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Apple argues that because Plaintiff consented to the Apple Terms – which permit the termination of an Apple ID account in the event of breach, his conversion and trespass claims fail. Plaintiff responds that he did not consent to the taking of his ownership interest in purchased apps accessible only through his Apple ID because that action was not described in the Apple Terms. But while Plaintiff argues he did not consent to the taking, Plaintiff concedes that he "accepted Defendant's Terms including the Termination Provision," Opp. at 18, which gives Apple the right to terminate a user's Apple ID account if it suspects a user has "failed . . . to comply with any of the provisions of" the Apple Terms. Dkt. No. 31-1 (Ex. A to First Amended Complaint) at 12. In other words, Plaintiff knew that he would lose access to his purchased apps and services if Apple determined (or even suspected) that he failed to comply with the Apple Terms. This forecloses his conversion claim.

Likewise, Plaintiff's consent dooms his trespass claim. *See Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1480 (1986) ("The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." (citations omitted)). Again, because Plaintiff was "on notice of [Apple's] ability to interfere with his [purchased apps and services]," the Court finds that Apple did not act without his authorization.[3] *Parziale v. HP, Inc*, No. 5:19-CV-05363-EJD, 2020 WL 5798274, at *7 (N.D. Cal. Sept. 29, 2020) (dismissing digital trespass claim where plaintiff was on notice that firmware update could cause harm by preventing printers from functioning with certain ink cartridges).

Accordingly, the Court grants Apple's motion to dismiss Plaintiff's conversion and trespass to chattel claims.

---

[3] Apple also seeks to dismiss Plaintiffs' conversion and trespass to chattel claims on the grounds that Plaintiff does not allege any facts supporting the inference that terminating Plaintiff's Apple ID "harmed the functioning" of Plaintiff's Apple devices. The Court need not reach this issue because the fact that Plaintiff consented to the Apple Terms is dispositive of Plaintiff's conversion and trespass to chattel claims.

### E. Unjust Enrichment (Claim 8)

"[A] quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001)); *see also Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1141 (S.D. Cal. 2021) (dismissing unjust enrichment claim where "it appears there was an express contract related to the conduct at issue").

Plaintiff's eighth claim for unjust enrichment asserts that Apple unjustly enriched itself by retaining its users' payments after terminating their Apple ID accounts under the Apple Terms. However, Plaintiff's claim is precluded because an actual, express agreement – the Apple Terms – relates to the conduct at issue. Compl. ¶ 130 (alleging Apple's conduct "requiring Plaintiff and the class to enter into contracts of adhesion" and "enforcing the contractual provisions that provide for the termination of its customers' Apple IDs"). Plaintiff does not contest this point.

Accordingly, the Court grants Apple's motion to dismiss as to Plaintiff's unjust enrichment claim.

### F. Equitable Relief

"[T]here is no right to equitable relief or an equitable remedy when there is an adequate remedy at law." *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-CV-04809-HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015) (citing *Prudential Home Mortgage Company v. Superior Court*, 66 Cal. App. 4th 1236, 1249 (1998)); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA"); *see also Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law.").

Here, because Plaintiff seeks compensation under the UCL and CLRA for the exact same conduct that forms the basis of his equitable relief claims, he has an adequate remedy at law. Thus, Plaintiff's UCL and CLRA equitable relief claims must be dismissed because the complaint does not allege that legal remedies are inadequate.

1    Accordingly, the Court grants Apple's motion to dismiss as to Plaintiff's UCL and CLRA
2    equitable relief claims.

### G. Leave to Amend

Leave to amend is only warranted "if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quotation omitted); *see also Sprewell*, 266 F.3d at 988 ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." (quotations omitted)).

No new or additional allegations could possibly cure the deficiencies in Plaintiff's claims for liquidated damages, unjust enrichment, and equitable relief without contradicting prior allegations. The Court thus finds that any amendment would be futile and dismisses those claims without leave to amend.

As for Plaintiff's remaining claims (alleging violations of the UCL and CLRA, and conversion and trespass to chattel), the Court has significant doubts as to whether Plaintiff can amend his complaint, consistent with his Rule 11 obligations, to allege facts sufficient to allege valid claims. However, because the Court cannot conclude that amendment necessarily would be futile, it dismisses those claims with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion as follows.

1. Apple's motion is **GRANTED** as to Plaintiff's Section 1671's liquidated damages claim without leave to amend;

2. Apple's motion is **GRANTED** as to Plaintiff's UCL and CLRA "unconscionable provision" claims with leave to amend;

3. Apple's motion is **GRANTED** as to Plaintiff's UCL "unfair business practice" claim with leave to amend;

4. Apple's motion is **GRANTED** as to Plaintiff's UCL "fraudulent business practice" claim with leave to amend;

5.  Apple's motion is **GRANTED** as to Plaintiff's conversion and trespass to chattels claims with leave to amend;

6.  Apple's motion is **GRANTED** as to Plaintiff's unjust enrichment claim without leave to amend; and

7.  Apple's motion is **GRANTED** as to Plaintiff's UCL and CLRA equitable relief claims without leave to amend.

If Plaintiff can cure the pleading deficiencies described above, he must file any amended complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 4/6/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

14