UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PRICE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE, INC.,<br><br>　　　　　Defendant. | Case No. 21-cv-02846-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 56 |

Pending before the Court is Defendant Apple, Inc.'s motion to dismiss Plaintiff Matthew Price's second amended complaint. *See* Dkt. No. 65. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons below, the Court **GRANTS** the motion.

**I.    BACKGROUND**

　　**A.    Allegations**

Plaintiff alleges that since approximately January 2015 he has had an Apple ID to purchase apps and other content from Apple. *See* Dkt. No. 53 ("SAC") at ¶¶ 2, 8–10, 23. Plaintiff further asserts that during this time he made several in-app game purchases that "did not work as advertised or at all." *See id.* at ¶ 24. He alleges that he contacted Apple, and was advised to contact the game/app developer. *Id.* When this was unsuccessful, he contacted Apple again, and the company suggested that he "talk to his bank/credit card company to have them chargeback the money he spent on said purchases." *Id.* Plaintiff contends that "chargebacks" are not "refunds," and defines them as "a consumer protection tool that allow consumers to get their money back for fraudulent charges or purchases that don't live up to standards . . . ." *See id.* at ¶ 4, n.4. Plaintiff acknowledges that he requested "multiple chargebacks" for purchases he made using his Apple

ID. *See id.* at ¶¶ 24, 26. In October 2020, after Plaintiff processed another chargeback, Apple terminated Plaintiff's Apple ID. *Id.* at ¶¶ 26–28. He no longer has access to the content that he purchased or the $7.63 in unspent money that he had in his Apple account at the time of his termination. *See id.* at ¶¶ 29–30. According to Plaintiff, an Apple representative told him that Apple terminated his Apple ID because he initiated these chargebacks. *See id.* at ¶ 27. Plaintiff contends that he did not violate Apple's Terms and Conditions, and says the company had no basis to terminate his account. *See id.* at ¶¶ 3, 22, 28, 33, 36, 40, 42. He urges that by terminating his Apple ID, Apple violated its own Terms and Conditions. *See id.* at ¶¶ 6, 58–72.

As relevant to this case, the Terms and Conditions state that users may not "plan or engage in any illegal, fraudulent, or manipulative activity." *See* SAC, Ex. A at 5–6. The Terms also state that Apple "may monitor [users'] use of the Services and Content" for compliance with the Terms, *id.* at 3, and that it may "refuse a refund request if we find evidence of fraud, refund abuse, or other manipulative behavior that entitles Apple to a corresponding counterclaim," *id.* at 2. The Terms also include the following termination provision:

> TERMINATION AND SUSPENSION OF SERVICES
>
> If you fail, or Apple suspects that you have failed, to comply with any of the provisions of this Agreement, Apple may, without notice to you: (i) terminate this Agreement and/or your Apple ID, and you will remain liable for all amounts due under your Apple ID up to and including the date of termination; and/or (ii) terminate your license to the software; and/or (iii) preclude your access to the Services.
>
> Apple further reserves the right to modify, suspend, or discontinue the Services (or any part or Content thereof) at any time with or without notice to you, and Apple will not be liable to you or to any third party should it exercise such rights.

*See id.* at 12.

### B. Procedural History

Plaintiff initially filed this putative class action in April 2021. *See* Dkt. No. 1. Apple moved to dismiss the complaint, Dkt. No. 20, but rather than oppose the motion, Plaintiff filed an amended complaint, Dkt. No. 31. At the time, Plaintiff asserted various claims, including for

2

1   violations of California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act
2   ("CLRA"), and for conversion, trespass to chattels, and unjust enrichment. *See* Dkt. No. 31.
3   Apple again moved to dismiss the complaint. Dkt. No. 32. The Court granted the motion to
4   dismiss in its entirety, but granted Plaintiff leave to amend the UCL and CLRA claims only. Dkt.
5   No. 52 at 13–14. Rather than amend his existing claims, however, Plaintiff's SAC asserts a new
6   breach of contract claim. *See* SAC at ¶¶ 58–72. Apple again moves to dismiss. Dkt. No. 56.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III.    DISCUSSION

Over a year after Plaintiff initially filed this case, he attempts to recast it as a breach of contract action. Plaintiff contends that Apple breached the termination provision of the Terms and Conditions by (1) terminating his Apple ID and (2) retaining his unused funds because his chargebacks were not prohibited by the Terms. *See* SAC at ¶¶ 58–72. But even as amended, the

3

Court finds that the latest complaint fails to state a claim for relief.

### A. Breach of Contract Claims

To state a breach of contract claim under California law, a plaintiff must allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011). Additionally, "[i]n an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *See, e.g.*, *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011); *see also Miron v. Herbalife Int'l, Inc.*, 11 Fed. App'x 927, 929 (9th Cir. 2001) ("The district court's dismissal of the [plaintiffs'] breach of contract claims was proper because the [plaintiffs] failed to allege any provision of the contract which supports their claim.").[1] Critically, Plaintiff here has not identified any provision of the Terms that Apple allegedly breached.

#### 1. Termination of Apple ID

*First*, Plaintiff asserts that Apple breached the "Termination and Suspension of Services" provision quoted in Section I above by terminating his Apple ID account. *See* SAC at ¶¶ 60–65. Plaintiff repeatedly asserts that chargebacks are lawful and not prohibited by the Terms. *See, e.g.*, *id.* at ¶¶ 3, 22, 28, 33, 36, 40, 42. Thus, according to Plaintiff, "Apple materially breached its Terms with Plaintiff and the members of the Class by erroneously finding, or suspecting, that they violated its Terms because they engaged in chargebacks." *Id.* at ¶ 64.

However, Plaintiff's breach of contract claim is belied by his own allegations. The Terms state that users may not "plan or engage in any illegal, fraudulent, *or manipulative activity*." *See* SAC, Ex. A at 5–6 (emphasis added). And under the termination provision, Apple may terminate a user's Apple ID if the user "fail[s], or *Apple suspects that [he] ha[s] failed, to comply with any of the provisions of [the Terms]* . . . ." *See* SAC, Ex. A at 12 (emphasis added). Although in his opposition Plaintiff suggests that Apple terminated his account "without any rational basis or

---

[1] As an unpublished Ninth Circuit decision, *Miron* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

suspicion," Dkt. No. 57 at 7, this is inconsistent with the allegations in the complaint. Plaintiff acknowledges that he requested "multiple chargebacks" for purchases he made using his Apple ID, and that Apple terminated his Apple ID because of this conduct. *See* SAC at ¶¶ 24, 26–27. It is simply immaterial whether Plaintiff's multiple chargebacks were actually fraudulent or manipulative because even as alleged, Apple suspected that they were. As the Court previously explained, because Plaintiff accepted the Terms, he "knew that he would lose access to his purchased apps and services if Apple determined (or even suspected) that he failed to comply with the Apple Terms." *See* Dkt. No. 52 at 11. Because Apple was "'given the right to do what [it] did by the express provisions of the contract there can be no breach.'" *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (quoting *Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (Cal. 1992)). The Court therefore **GRANTS** Apple's motion to dismiss as to this claim.

### 2. Withholding Funds

*Second*, and relatedly, Plaintiff asserts that Apple breached the "Termination and Suspension of Services" provision by withholding Plaintiff's access to his unused funds after it terminated his Apple ID. *See* SAC at ¶¶ 66–72. In doing so, Plaintiff has reframed his conversion claim—which the Court dismissed—as a breach of contract claim. *See* Dkt. No. 52 at 10–11. In its prior order, the Court explained that Plaintiff consented to the Terms, which give "Apple the right to terminate a user's Apple ID account if it suspects a user has 'failed . . . to comply with any of the provisions of' the Apple Terms." *Id.* at 11 (quoting Apple Terms). In any event, to plead a breach of contract claim here Plaintiff must identify "the specific provisions in the contract creating the obligation the defendant is said to have breached." *See Young*, 790 F. Supp. 2d at 1117. But the termination provision that Plaintiff relies on does not say anything about returning unused funds to users whose accounts are terminated. Plaintiff fails to explain how Apple nevertheless breached this provision. In short, Plaintiff has not identified any provision of the Terms that Apple actually breached by withholding access to any unused funds. *See, e.g.*, *In re Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.*, No. MD 11-2269 TEH, 2012 WL 1123863, at *3 (N.D. Cal. Apr. 3, 2012) (dismissing breach of contract claim that was based on *absence* of a

term allowing the contested conduct). The Court therefore **GRANTS** Apple's motion as to this claim as well.[2]

### B.     Limitation of Liability Provision

Even if Plaintiff adequately alleged a breach of contract claim, Apple argues that his claims are nevertheless barred by Apple's limitation of liability provision. *See* Dkt. No. 56 at 13–15. Under the Terms, a user "agree[s] that [he] shall not sue or recover any damages from Apple . . . as a result of its decision . . . to suspend or terminate [the user's] access to the services . . . ." *See* SAC, Ex. A at 12–13. In response, Plaintiff explicitly states that he "does not argue that Apple's limitation of liability provision is unconscionable . . . ." *See* Dkt. No. 57 at 11, n.5. Rather, he argues that the provision is void because (1) it is contrary to public policy under California law, and (2) it would permit Apple to evade statutory liability. Dkt. No. 57 at 11–17. The Court is not persuaded.

Under California law, "[w]ith respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (Cal. Ct. App. 2012). Here, Plaintiff suggests that enforcing this limitation of liability provision is contrary to public policy because the Apple Terms "implicate [the] public interest." *See* Dkt. No. 57 at 12–15 (citing *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 98–109 (Cal. 1963) (en banc)). In determining whether the public interest exception applies, courts consider such factors as whether the contract "concerns a business of a type generally thought suitable for public regulation" and whether "[t]he party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public." *Id.* at 98–99. The California Supreme Court

---

[2] To the extent Plaintiff attempts in his opposition brief to amend his complaint to add a cause of action for breach of the implied covenant of good faith and fair dealing, Dkt. No. 57 at 8–9, this is improper. The SAC does not allege a violation of the covenant of good faith and fair dealing. In any event, as already discussed, the Terms expressly allowed Apple to terminate Plaintiff's account based on its suspicion of manipulative activity. *See Carma*, 2 Cal. 4th at 374 (rejecting covenant of good faith and fair dealing claim based on conduct expressly permitted by terms of agreement).

has explained that in such circumstances, "[s]ince the service is one which each member of the public, presently or potentially, may find essential to him, he faces, despite his economic inability to do so, the prospect of a compulsory assumption of the risk of another's negligence." *Id.* at 101.

Here, Plaintiff contends that "[w]hile Apple may not provide life-or-death services, there can be no doubt that its Services have become 'a practical necessity' for a large percentage of the public." Dkt. No. 57 at 13; *see also id.* at 14 ("Apple provides products and Services of practical necessity to the public . . . ."). But Plaintiff offers no support for this assertion. Even if Apple products are as "ubiquitous" as Plaintiff suggests, *id.* at 14, that is not the same as being essential. Plaintiff's own authority clarifies that in determining whether a service is essential, courts should consider: "Is the service merely an optional item consumers can do without if they don't want to waive their rights to recover for negligence or is it something they need enough so they have little choice if the provider attaches a liability disclaimer?" *See Gavin W. v. YMCA of Metro. Los Angeles*, 106 Cal. App. 4th 662, 672 (Cal. Ct. App. 2003) (quotation omitted). In *Gavin*, for example, the court found that childcare services were essential because "55 percent of children ages 13 and under live in families with two employed parents or an employed single head of household," and due to cost of living, few parents can afford to stay home to care for young children. *Id.* at 671–72. Plaintiff has no credible argument that use of Apple's products in this case is not optional.

In the absence of such an explanation, the Court agrees with Apple that the Terms are a contract "governing the voluntary use and purchase of nonessential recreational activities and entertainment media." *See* Dkt. No. 58 at 10. As Plaintiff's own complaint indicates, he used his Apple ID to purchase recreational content such as "movies, music, games, media, [and] books." *See* SAC at ¶ 2; *see also id.* at ¶ 24 (alleging that Plaintiff "made numerous in app game purchases through Apple"). And he seeks "to recover the money paid to Apple for Apps, music, movies, TV shows, services and/or other Content [he and the putative class] purchased . . . ." *Id.* at ¶ 39. Plaintiff cites no authority supporting his argument that the public interest exception should apply in this context. *Cf. Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 823 (Cal. Ct. App. 2010) ("[O]ur courts consistently hold that recreation does not implicate the public interest,

7

1  and therefore approve exculpatory provisions required for participation in recreational activities.")
2  (collecting cases).

3      Plaintiff also urges that enforcing the limitation of liability provision would allow Apple to
4  evade statutory liability. *See* Dkt. No. 57 at 16–17. This argument is similarly misplaced.
5  Because Plaintiff only brings breach of contract claims here, and his previous statutory claims
6  were dismissed, enforcing the liability limitation provision in this case would not allow Apple to
7  evade any statutory liability. Plaintiff cites Cal. Civ. Code § 1668, Dkt. No. 57 at 16, which states
8  that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from
9  responsibility for his own fraud, or willful injury to the person or property of another, or violation
10 of law, whether willful or negligent, are against the policy of the law." But again, this is a breach
11 of contract case, and courts routinely uphold liability limitation provisions in this context. *See,*
12 *e.g.*, *Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103 at *9 (N.D. Cal. Mar.
13 5, 2021) (finding limitation of liability clause barred breach of contract claims); *Huynh v. Quora,*
14 *Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875 at 11 (N.D. Cal. 2019) (same); *Bass v.*
15 *Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037–38 (N.D. Cal. 2019) (same). And to the extent
16 Plaintiff suggests that Apple may have violated various state or federal regulations, *see* Dkt. No.
17 57 at 16, he did not allege any such facts in the complaint and he may not amend the complaint to
18 add new causes of action through his opposition.

19     Accordingly, even if Plaintiff had stated a breach of contract claim, he has not adequately
20 explained why under the circumstances of this case, the limitation of liability provision would not
21 be enforceable and bar such claims.

22 **IV.   CONCLUSION**

23     The Court **GRANTS** Apple's motion to dismiss. Plaintiff has had ample opportunity to
24 state a claim for relief, but has repeatedly failed to do so. The Court finds that granting leave to
25 amend would be futile, and therefore **DISMISSES** the case without leave to amend. *See Zucco*
26 *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has
27 previously been granted leave to amend and has subsequently failed to add the requisite
28 particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly

8

broad." (quotation omitted)).  The Clerk is directed to enter judgment in favor of Defendant Apple, Inc. and to close the case.

**IT IS SO ORDERED.**

Dated: 3/28/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge